UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| HENRY J. ELLENDER HEIRS, LLC | * | CIVIL ACTION |
|---|---|---|
| | * | |
| VERSUS | * | NO. 14-711 |
| | * | |
| EXXON MOBIL CORPORATION, ET AL. | * | SECTION "L" (3) |

## ORDER & REASONS

Before the Court is a Motion to Remand filed by Plaintiff Henry J. Ellender Heirs, L.L.C. (Rec. Doc. 14-711). The Court has reviewed the briefs and applicable law and, after hearing oral argument on the motion, now issues this Order & Reasons.

## I.   BACKGROUND

On February 18, 2014, the Plaintiff filed the present lawsuit in State Court in the 32nd Judicial District Court for the parish of Terrebonne. (Rec. Doc. 1-1 at 1). The Plaintiff claims that that it owns and/or uses several tracts of property located in the Lirette Field in Terrebonne Parish, Louisiana. (Rec. Doc. 1-1 at 1). According to the Plaintiff, Defendants Exxon Mobil Corporation ("Exxon"), Badger Oil Corporation ("Badger"), Denbury Onshore, LLC ("Denbury"), and Hilcorp Energy Company and Hilcorp Energy I, L.P. ("Hilcorp"), operated wells in the Lirette Oil & Gas Field ("the Field") pursuant to a 1933 oil, gas and mineral lease. The Plaintiff claims that Defendants contaminated its land through oil and gas exploration and production activities, including the operation or construction of various oil and gas facilities, pits, wells, sumps, flowlines, pipelines, tank batteries, wellheads, measuring facilities, separators, and injection facilities. (Re.c Doc. 1-1 at 3). The Plaintiff further alleges that Exxon, Badger,

1

Denbury and Hilcorp operated a gas plant, salt water injection wells, and related facilities on a portion of the property pursuant to a 1937 surface lease and subsequent surface lease amendments. (Rec. Doc. 1-1 at 4). The Plaintiff alleges that the Defendants used unlined earthen pits that are still open and have not been closed in accordance with Louisiana Department of Conservation Order 29-B. The Plaintiff claims that the Defendants' disposal of oilfield waste in these unlined earth pits has caused contamination of surface and subsurface soils and waters. (Rec. Doc. 1-1 at 7). The Plaintiff claims that "Defendants knew or should have known that their day to day operations in the Field would cause the soil, surface waters and groundwater of plaintiff's Property to be contaminated . . ." (Rec. Doc. 1-1 at 8). Further, the Plaintiff claims that "Defendants knew for many years that they were disposing, storing, discharging, and otherwise releasing toxic poisons and pollutants onto and into the ground, groundwaters, and surface waters on or near plaintiff's Property. Yet, defendants failed to inform or warn plaintiff concerning the extent, nature, cause and origin of this pollution." (Rec. Doc. 1-1 at 9).

The Plaintiff is suing Defendants for negligence, breach of contract, and breach of obligations imposed by the Louisiana Mineral Code and Louisiana Civil Code. (Rec. Doc. 1-1 at 10-16). The Plaintiff asks to be compensated for, among other things, the scientific analysis that must be performed on the land, the cost to restore the property, loss of use of land and lost profits and income. (Rec. Doc. 1-1 at 18). The Plaintiff states that it "asserts only those private causes of action accorded to it under the Louisiana Constitution and the laws of the State of Louisiana. Plaintiff has not pled, and will never at any time in the future plead, any claim or cause of action arising under federal law, and asserts no such claims herein." (Rec. Doc. 1-1 at 20).

On March 28, 2014, Defendant Badger removed the case to this Court. Badger claims

that removal is appropriate under 18 U.S.C. §§ 1331 and 1441(a) because "the Petition seeks to litigate claims that are created by federal law and the alleged state law claims cannot be adjudicated without resolving a substantial question of federal law." (Rec. Doc. 1 at 3). Specifically, Badger claims that: (1) the action arises in connection with oil and gas operations conducted on the Outer Continental Shelf, (2) the action asserts general maritime claims, and (3) the Natural Gas Act confers federal jurisdiction over this claim. (Rec. Doc. 1 at 4).

## II. PRESENT MOTION

### A. Plaintiff's Motion to Remand

Before the Court today is a motion to remand, filed by the Plaintiff. (Rec. Doc. 30). First, the Plaintiff claims that the Outer Continental Shelf Lands Act ("OCSLA") does not apply. The Plaintiff claims that all of the complained-of *activities*, which include exploration, production and transportation activities, took place onshore within the territorial limits of Louisiana. The Plaintiff also emphasizes that the complained-of *damages* occurred onshore as well. The Plaintiff claims that the Fifth Circuit has directly rebutted Badger's argument that indirect connectivity to operations on the OCS is sufficient to invoke OCSLA jurisdiction. (Rec. Doc. 30-1 at 8) (citing *Herb's Welding v. Gray*, 766 F.2d 898, 900 (5th Cir. 1985)). The Plaintiff argues that Badger's theory would extend OCSLA coverage to "virtually any issue involving the United States' oil and gas industry infrastructure" including "explosions involving land-based storage facilities, pipelines, refineries, and even gas stations . . ." (Rec. Doc. 30-1 at 9).

Second, the Plaintiff argues that jurisdiction does not exist in this Court under 29 U.S.C. § 1441 because this is not a maritime case and because the saving-to-suitors clause of 28 U.S.C. § 1333 prevents removal of general maritime claims. The Plaintiff claims that oil and gas exploration, which is the complained-of activity in this case, have been held to be non-maritime

in nature. (Rec. Doc. 30-1 at 12) (citing *Herb's Welding v. Gray*, 470 U.S. 414, 425 (1985); *Thibodeaux v. Grasso Prod. Mgmt. Inc.*, 370 F.3d 486, 493 (5th Cir. 2004)). The Plaintiff also argues that even if this were a maritime case, the 2011 amendments to 28 U.S.C. § 1441 do not make all maritime actions removable. Instead, the Plaintiff argues, there must be some other jurisdictional basis. (Rec. Doc. 30-1 at 11). The Plaintiff claims that the savings-to-suitors clause preserves the historic option of a maritime suitor to select his forum and pursue common-law remedies in either state or federal court. (Rec. Doc. 30-1 at 11).

Third, the Plaintiff argues that federal question jurisdiction does not exist under the Natural Gas Act. (Rec. Doc. 30-1 at 13). The Plaintiff claims that the "well-pleaded complaint" rule provides that the Court should look to what appears in the Plaintiff's "statement of his own claim" in determining whether federal question jurisdiction exists. (Rec. Doc. 30-1 at 13). The Plaintiff emphasizes that as the "master of the complaint" it did not raise a federal question on the face of its complaint. (Rec. Doc. 30-1 at 14). The Plaintiff argues that this is a civil action based entirely on state law and that no disputed question of federal law is a necessary element of the well-pleaded state claims. (Rec. Doc. 30-1 at 14).

### B. Badger's Opposition

In opposition, Badger reiterates and incorporates much of what it stated in its notice of removal. First, Badger claims that the Plaintiff's petition "seeks to remove, alter or impact oil and gas infrastructure and development and production on the Outer Continental Shelf, thus triggering federal jurisdiction." (Rec. Doc. 36 at 2). Citing the Fifth Circuit's opinion in *In re Deepwater Horizon*, Badger claims that OCSLA jurisdiction can exist even where the acts and omissions giving rise to the suit occur on land. (Rec. Doc. 36 at 2) (citing 745 F.3d 157, 163 (5th Cir. 2014). Badger claims that this is the case here because the case "arises out of, or in

4

connection with" operations that are conducted on the Outer Continental Shelf. (Rec. Doc. 36 at 2). Badger claims that the gas plant, canals, and tank battery leases referenced by the Plaintiff all involved pipelines underlying the Plaintiff's property and that one such pipeline was part of the mass pipeline network leading onshore from offshore oil and gas production, and ultimately across state lines. (Rec. Doc. 36 at 6). Badger concedes that it is unable to specifically cite to particular pipeline activity involving Lirette Field and offshore production, transportation, and processing. (Rec. Doc. 36 at 7). However, Badger argues that the Plaintiff's claims relating to gas handling, transportation, and processing, would not have existed but-for operations on the OCS, making jurisdiction proper. (Rec. Doc. 36 at 7).

Second, Badger argues that federal jurisdiction is appropriate because the Plaintiff's state law claims cannot be adjudicated without resolving a substantial question of federal law. (Rec. Doc. 36 at 2). Specifically, Badger claims that under the Natural Gas Act, the federal government exercises exclusive jurisdiction over rates, tariffs, and facilities of natural gas companies engaged in the transportation of natural gas in interstate commerce. Badger claims that Plaintiff's property at issue and the contracts and agreements attached to that property all concern natural gas transported onshore and processed via pipeline interconnection. (Rec. Doc. 36 at 3).

Third, Badger argues that this Court's maritime jurisdiction covers this claim. Badger argues that Plaintiff's petition satisfies the well-established two-part test for maritime jurisdiction "because it alleges injury suffered on land caused by dredging vessels on a navigable waterway." (Rec. Doc. 36 at 3).

### III. LAW & ANALYSIS

#### A. Standard

28 U.S.C. § 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Accordingly, a defendant may remove a case to federal court if the federal court would have had original jurisdiction over the action. "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013). The Fifth Circuit has explained that the removal statute should be strictly construed. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Any doubt concerning the basis of jurisdiction should be resolved in favor of remand. *Acuna v. Brown & Root*, 200 F.3d 335, 339 (5th Cir. 2000). Once a motion to remand has been filed, the burden is on the defendant to prove, by a preponderance of the evidence, that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

### B. Outer Continental Shelf Lands Act – 43 U.S.C. § 1331

"The purpose of the [OCSLA] was to define a body of law applicable to the seabed, the subsoil, and the fixed structures . . . on the outer Continental Shelf." *EP Operating Ltd. Partnership v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994). Accordingly, 43 U.S.C. § 1333 provides that the law to be applied to the OCS is exclusively federal, with the law of the adjacent state being adopted as surrogate federal law to the extent such law is applicable and not inconsistent with federal law. *See EP Operating Ltd.*, 26 F.3d at 566; 43 U.S.C. § 1333(a)(1) ("The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Contintental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be

erected thereon for the purpose of exploring for, developing, or producing resources therefrom . . ."). OCSLA also provides for original jurisdiction in the district courts over all cases arising out of operations on the OCS for the development of the natural resources. *EP Operating Ltd.*, 26 F.3d at 569. Specifically, the pertinent section provides that "the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . ." 43 U.S.C. § 1349(b)(1). "The Fifth Circuit has interpreted this language as straightforward and broad." *In re DEEPWATER HORIZON*, 745 F.3d at 163. "[T]he most consistent reading of the statute instructs that the jurisdictional grant of section 1349 should be read co-extensively with the substantive reach of section 1333." *EP Operating Ltd.*, 26 F.3d at 569. Accordingly, the Fifth Circuit has determined that "Congress intended for the 'judicial power of the United States to be extended to the entire range of legal disputes that it knew would arise relating to resource development on the Outer Continental Shelf.'" *EP Operating Ltd.*, 26 F.3d at 569.

A plaintiff does not need to expressly invoke OCSLA in order for it to apply. *In re DEEPWATER HORIZON*, 745 F.3d at 163. The Fifth Circuit has recently explained that "[c]ourts typically assess jurisdiction under this provision in terms of whether (1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation." *Id.*; *see also In re Oil Spill Rig Deepwater Horizon in Gulf of Mexcio*, 747 F.Supp.2d 704, 708 (E.D. La. 2010). In order to determine whether a case "arises out of, or in connection with" the operation, the Fifth Circuit applies a "but-for" test, "i.e., but for

7

the operation, would the case or controversy have arisen." *In re Oil Spill Rig Deepwater Horizon in Gulf of Mexcio*, 747 F.Supp.2d at 708; *see also Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013) ("To determine whether a cause of action arises under OCSLA, the Fifth Circuit applies a but-for test, asking whether: (1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment).

In the present case, the activities that caused the alleged injury do not meet the first prong of the Fifth Circuit's test as they do not constitute an operation that was conducted on the outer Continental Shelf. The Plaintiff's case arises out of alleged exploration and production activities that took place *on land*. The Plaintiff claims that its land was contaminated "by oil an gas exploration and production activities." (Rec. Doc. 1-1 at 3). Specifically, the Plaintiff asserts that "Defendants' activities include the operation or construction of various oil and gas facilities, including but not limited to, pits, wells, sumps, flowlines, pipelines, tank batteries, wellheads, measuring facilities, separators, and injection facilities." (Rec. Doc. 1-1 at 3). All of these activities occurred on land and were clearly land-based. Gas that was acquired from onshore production plants was placed into pipelines. Even if, as Badger alleges, this gas was then "co-mingled" with pipelines that were coming from the outer Continental Shelf, that does not create a sufficient connection to invoke OCSLA under the facts of this case. Accordingly, this Court does not have jurisdiction over the present case pursuant to OCSLA.

### C. Maritime Law

28 U.S.C. § 1333 provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

The test to determine whether admiralty jurisdiction exists in tort cases was outlined by the Supreme Court in *Grubart, Inc. v. Great Lakes Dredge & Dock Co.*:

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water. The connection test raises two issues. A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise of the incident shows a substantial relationship to traditional maritime activity.

513 U.S. 527, 534 (1995) (citations and internal quotations omitted). The tort claim in the present case does not meet the first condition of federal admiralty jurisdiction—the location condition. The alleged harmful acts all occurred on land. While Badger emphasizes that some of the acts involved canals, the evidence indicates that these canals were private, special-use canals and thus not navigable. Even if this case did meet the location test, it would still fail the connection test. The Fifth Circuit, in *Thibodeaux v. Grasso Production Management, Inc.*, stated that "[b]oth this court and the Supreme Court have expressed the opinion that work commonly performed on oil production platforms is not maritime in nature." 370 F.3d 486, 493 (5th Cir. 2004) (citing *Manguia v. Chevron U.S.A., Inc.*, 999 F.2d 808, 813 (5th Cir. 1993); *Herb's Welding*, 470 U.S. at 423-23). Badger cites this Court's opinion in *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico*, for the proposition that the connection test can be met when the activities alleged involve oil and gas production. 808 F.Supp.2d 943, 951 (E.D. La. 2011). In that case, the court found that the connection test was met because the explosion caused a disruption of maritime commerce and the operations of the DEEPWATER HORIZON "bore a substantial relationship to traditional maritime activity." *Id.* (citing *Theriot v. Bay*

9

*Drilling Corp.*, 783 F.2d 527, 238-39 (5th Cir. 1986) ("oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce")). The activity in the present case did not cause a disruption of maritime commerce like the one caused by the oil spill on the DEEPWATER HORIZON. Further, the exploration and production activities that took place on land, at the Lirette Field, do not have the same relationship to traditional maritime activities that the operations on the DEEPWATER HORIZON had. Accordingly, the Court does not find this opinion applicable and does not have jurisdiction over this case pursuant to 28 USC § 1333.

Further, even if this were a maritime case, it would not be removable absent some other basis for federal jurisdiction because of the "saving to suitors" clause provided in 28 U.S.C. § 1333. The Court recognizes that since the 2011 amendments to 28 U.S.C. § 1441, the removability of maritime cases has sparked considerable debate and differences of opinion. In *Ryan v. Hercules Offshore, Inc.*, the Southern District of Texas analyzed the 2011 amendment to 28 U.S.C. § 1441 and determined that pursuant to the new version of the statute, admiralty claims are removable regardless of whether any other basis for federal jurisdiction exists. *See* 945 F.Supp.2d 772, 779 (S.D. Tx. 2013). The court reasoned that when Congress amended section 1441, it deleted the text upon which courts in the Fifth Circuit had previously interpreted as precluding removal of admiralty cases. *Id.* at 777. While the court's reasoning is compelling, this Court is unable to come to terms with the fact that such an interpretation would render the saving-to-suitors clause meaningless—a result that is inconsistent with the historical underpinnings of admiralty jurisdiction. Instead, the Court agrees with the recent decision in *Dewayne Gregoire v. Enterprise Marine Services, LLC and ABC Insurance Co.*, which provides a comprehensive analysis of this issue. *See* No. 14-840; 2014 WL 3866589 (E.D. La. Aug. 6, 2014). "[G]eneral maritime law claims are not removable under Section 1333 as part of the

original jurisdiction of the court and require an independent basis of jurisdiction." *Id.* at *3; *see also* Robertson, *Recent Development in Admiralty and Maritime Law*, 37 Tul. Mar. L. J. 401, 408 (Summer 2013) ("'[i]t is black-letter law that the saving-to-suitors clause is an 'express' provision of Congress against the removability of state-court maritime cases.' Therefore, it should remain good law that cases in which admiralty is the only basis for federal subject matter jurisdiction are not removable.")

### D. Natural Gas Act

The well-pleaded complaint rule provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The rule governs whether a claim arises under federal law so as to confer federal question jurisdiction under 28 U.S.C. § 1331. This rule is based on the theory that the plaintiff is "the master of her complaint." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir.2001) (citing *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir.1995)). Accordingly, under the well-pleaded complaint rule, when a plaintiff has a choice between federal and state law claims, she may proceed in state court "on the exclusive basis of state law, thus defeating the defendant's opportunity to remove." *Id.*; *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 747 F. Supp. 2d 704, 707 (E.D. La. 2010) aff'd sub nom. *In re DEEPWATER HORIZON*, 745 F.3d 157 (5th Cir. 2014). If, however, the plaintiff's right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties, the case may still "arise under" the laws of the Untied States." *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 13 (1983).

According to Badger, the Natural Gas Act, 15 U.S.C. § 717-717w, establishes federal

11

question jurisdiction over cases and controversies involving ownership, operation, rates and tariffs of facilities of natural gas companies certified by the Federal Energy Regulatory Commission ("FERC"). 15 U.S.C. §717u states that "[t]he District Courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder." 15 U.S.C. § 717u. Badger claims that because the Natural Gas Act requires natural gas companies to obtain certificates from the FERC and because the Plaintiff's claims involve "FERC certificated activities," such claims arise under the FERC's exclusive jurisdiction. (Rec. Doc. 36 at 8). Badger claims that "Plaintiff's requests for relief present substantial federal questions which cannot be determined by state court . . ." (Rec. Doc. 36 at 9).

The Court disagrees. Badger cites no cases that have found federal jurisdiction over state claims because of their relationship to the regulatory scheme created by the FERC. The Plaintiff has sued the Defendants for negligence, breach of contract, and breach of obligations imposed by the Louisiana Mineral Code and Louisiana Civil Code. (Rec. Doc. 1-1 at 10-16). There are no "substantial federal questions" that must be resolved in order to evaluate these claims. To the extent that the Defendants might use their compliance with FERC as a defense to liability, this argument fails. The Supreme Court has stated that "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint. *Caterpillar*, 482 U.S. at 393.

IV. **CONCLUSION**

For the foregoing reasons,

12

**IT IS ORDERED** that the Plaintiff's Motion to Remand (Rec. Doc. 30) is hereby **GRANTED**. This case is to be remanded to State Court for further proceedings.

New Orleans, Louisiana, this 26th day of August, 2014.

_____
UNITED STATES DISTRICT COURT JUDGE